UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

ANNETTE LINDSEY,              )
                              )
    Plaintiff,                )
                              )
v.                            ) 1:10-cv-00038-JAW
                              )
SOCIAL SECURITY ADMINISTRATION)
COMMISSIONER,                 )
                              )
    Defendant                 )

**RECOMMENDED DECISION**

The Social Security Administration found that Annette Lindsey, 45 years old as of the date of alleged onset of disability, has a severe impairment consisting of bipolar disorder, but retains the functional capacity to perform substantial gainful activity in occupations she performed in her past, as well as other jobs existing in significant numbers in the national economy, resulting in a denial of Lindsey's application for disability benefits under Title II and Title XVI of the Social Security Act. Lindsey commenced this civil action for judicial review of the final administrative decision, alleging errors at steps 4 and 5 of the sequential evaluation process. I recommend that the Court remand for further administrative proceedings.

**Standard of Review**

The standard of review is whether substantial evidence supports the Commissioner's findings. 42 U.S.C. §§ 405(g), 1383(c)(3); Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. Richardson v. Perales, 402 U.S. 389, 401 (1971); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not

conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

## The Administrative Findings

The Commissioner's final decision is the November 3, 2009, decision of the Appeals Council, which "found no reason . . . to review the Administrative Law Judge's decision." (R. at 4.)[1] The Commissioner rests, in effect, on the October 16, 2008, decision issued by Judge Guy Fletcher. (Id. at 12-26.) Judge Fletcher's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability claims.

At step 1 of the sequential evaluation process, the Judge found that Lindsey meets the insured status requirements of Title II through September 30, 2009, and has not engaged in substantial gainful activity since September 1, 2005, the date of alleged onset of disability. (Findings 1 & 2, R. 14.)

At step 2, the Judge found that a severe bipolar disorder significantly limits Lindsey's ability to perform basic work activities. (Finding 3, R. 14.)

At step 3, the Judge found that this mental impairment would not meet or equal any listing within the Commissioner's Listing of Impairments, addressing, in particular, mental listing 12.04. (Finding 4, R. 15.) Lindsey does not press a contrary argument here.

At step 4, the Judge found that the medical evidence and other evidence of record reasonably demonstrates that Lindsey has the residual functional capacity to perform only simple duties requiring little or no judgment that can be learned after a short demonstration or within 30 days. (Finding 5, R. 16.) The Judge found, with the assistance of testimony from a vocational expert, that this degree of limitation would not prevent Lindsey from performing past relevant

---

[1] The administrative record in this case is filed in paper form, unlike the other Bangor social security cases filed this quarter.

work as a cashier or cleaner, resulting in a finding that she is not disabled. (Finding 6, R. 19.) Alternatively, the Judge indicated that the Medical-Vocational Guidelines would direct a finding of not disabled, if the sequential evaluation process continued to step 5. (Id.)

## Discussion of Plaintiff's Statement of Errors

Lindsey argues that the step 4 finding related to past relevant work is not supported by substantial evidence. She maintains that her work as a cleaner for a motel cannot be considered past relevant work because it was too remote in her past and was part-time employment. As for her cashier work, Lindsey demonstrates that it was the kind of cashiering that is classified as semi-skilled and, therefore, is incompatible with the finding that she is now restricted to unskilled work on account of her mental impairment. (Id. at 7-8, citing R. 35, 76.) At oral argument, the Commissioner conceded that the past relevant cashier work was outside of the unskilled category stated in the RFC finding. The Commissioner also conceded that Lindsey's past cleaner job was not performed at the substantial gainful activity level and, therefore, did not qualify as past relevant work. Consequently, the finding that Lindsey is not disabled depends on the step 5 determination.

Lindsey argues that the Judge erred insofar as he offered a step 5 alternative finding without setting it out under its own caption and without offering further explanation of how he arrived there. Additionally, Lindsey says it is improper for an administrative law judge to proceed to step 5 if he has made a finding of not disabled at step 4. (Statement of Errors at 4-6, Doc. No. 10.) If that argument is not accepted, then Lindsey contends that the residual functional capacity picture requires the inclusion of a concentration, persistence, and pace limitation and calls for vocational expert testimony rather than a guidelines decision at step 5. (Id. at 9-15.)

3

## A. Alternative findings are appropriate

According to Lindsey, an administrative law judge may not offer an alternative step 5 finding when he or she has made a finding of "not disabled" at step 4. (Statement of Errors at 4-5, citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)[2].) The Commissioner rejected this notion at oral argument, citing cases in which alternative step 5 findings were reviewed and affirmed after step 4 findings were rejected. See Tommasetti v. Astrue, 533 F.3d 1035, 1042-43 (9th Cir. 2008); Murrell v. Shalala, 43 F.3d 1388, 1389 (10th Cir. 1994); Ziegler v. Astrue, 336 Fed. Appx. 563, 570 (7th Cir. July 7, 2009) (unpublished); see also Laffely v. Barnhart, No. 04-273-P-C, 2005 WL 1923515, *3, 2005 U.S. Dist. Lexis 16328, *7 (D. Me. Aug. 9, 2005) (Mag. J. Rec. Dec.) (characterizing a step 4 error as harmless in light of alternative finding at step 5). Of the cited authorities, the Tenth Circuit opinion is the only one in which the issue is discussed. I agree with the Tenth Circuit that it would be impractical and counter-productive to remand a case on this ground. As the Tenth Circuit observed:

> Whatever the particular result in any given case, the use of alternative dispositions generally benefits everyone: the Secretary relieves a pressing work load by resolving cases thoroughly once; the courts avoid successive, piecemeal appeals; and litigants are spared the protracted delays that result when a case drags on incrementally, bouncing back-and-forth between administrative (re)determinations and judicial review thereof.

Murrell, 43 F.3d at 1389. In addition to the other cases cited by the Commissioner at oral argument, the Tenth Circuit listed a handful of additional cases demonstrating "matter-of-fact consideration of alternate-ground dispositions in the present context without any suggestion of impropriety." Id. The Court should not endorse Lindsey's counterproductive proposal.

---

[2] According to these regulations: "If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step. If we cannot find that you are disabled or not disabled at a step, we go on to the next step."

4

**B. Mental RFC development and application of the Guidelines at step 5**

Lindsey also describes the alternative step 5 finding as "dicta" and argues that it should not be affirmed because it is not based on supportive vocational expert testimony and is not sufficiently developed to merit judicial consideration. (Id. at 5-6.) The Judge's step 5 finding is that other work is available to Lindsey based on the Commissioner's Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, § 204.00, due to the fact that the residual functional capacity finding reflects merely a restriction to simple duties requiring little judgment that can be learned after a short demonstration or within 30 days.

At step 5, the burden shifts to the Commissioner to demonstrate that a significant number of jobs exist in the national economy that the claimant could perform, other than the claimant's past relevant work. 20 C.F.R. §§ 404.1520(g), 419.920(g); Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987); Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 7 (1st Cir. 1982). Ordinarily, the Commissioner will meet the step 5 burden, or not, "by relying on the testimony of a vocational expert" in response to a hypothetical question whether a person with the claimant's RFC, age, education, and work experience would be able to perform other work existing in the national economy. Arocho v. Sec'y of Health & Human Servs., 670 F.2d 374, 375 (1st Cir. 1982). In some cases, however, the claimant's RFC and vocational profile (age, education, and prior work experience), permit the Commissioner to find that the claimant is capable of performing jobs existing in substantial numbers based on "the Guidelines," without resort to vocational expert testimony. 20 C.F.R. §§ 404.1569a, 416.969a.

Varyingly referred to as "the Grid," "the Grids," or "Appendix 2," the Guidelines are rules adopted by the Social Security Administration that direct a finding of "not disabled" or "disabled" when a claimant meets certain "functional and vocational patterns." Medical-

Vocational Guidelines, Appendix 2 to 20 C.F.R. Part 404, Subpart P, § 200.00 ("Appendix 2"). Pursuant to the Guidelines: "Where the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled." Id. § 200.00(a). However, if "any one of the findings of fact does not coincide with the corresponding criterion of a rule, . . . full consideration must be given to all of the relevant facts of the case." Id.

In practice, the Guidelines afford a shortcut to the Commissioner when it comes to addressing some claims at step 5, at which step the Commissioner must demonstrate the existence of a significant number of jobs in the national economy that the claimant has the capacity to perform. Heggarty v. Sullivan, 947 F.2d 990, 995 (1st Cir. 1991). In effect, the Commissioner is able to take "administrative notice" that sufficient jobs exist for a claimant when the claimant's RFC and vocational profile "coincide with the criteria of a rule." Appendix 2 § 200.00(b). "However, the existence of such jobs for individuals whose remaining functional capacity or other factors do not coincide with the criteria of a rule must be further considered in terms of what kinds of jobs or types of work may be either additionally indicated or precluded." Id. Thus: "If an individual's specific profile is not listed within this Appendix 2, a conclusion of disabled or not disabled is not directed." Id. § 200.00(d). Such cases are "decided on the basis of the principles and definitions in the regulations, giving consideration to the rules for specific case situations in this Appendix 2." Id.

Because the Guidelines are structured in relation to exertional limitations, "they may not be fully applicable where the nature of an individual's impairment does not result in such limitations, e.g., certain mental, sensory, or skin impairments." Id. § 200.00(e). For example, in

cases like the instant case, where the claimant has nonexertional limitations rather than exertional limitations, the Guidelines do not direct an outcome, but they still "provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations." Id. § 200.00(e)(2). In such cases "full consideration must be given to all of the relevant facts in the case in accordance with the definitions and discussion of each factor in the appropriate sections of the regulations, which will provide insight into the adjudicative weight to be accorded each factor." Id. See also 20 C.F.R. §§ 404.1569a(b), (c)(2), (d), 416.969a(b), (c)(2), (d). This is what the Administrative Law Judge meant when he stated that the Guidelines provided "guidance" that a finding of not disabled would be reached using section 204.00 of the Guidelines even if his step 4 findings were in error. (Finding 6, R. 19.) The guidance that section 204.00 offers is that "an impairment which does not preclude heavy work . . . would not ordinarily be the primary reason for unemployment, and generally is sufficient for a finding of not disabled, even though age, education, and skill level of prior work experience may be considered adverse." Appendix 2 § 204.00. The Commissioner may not rely on the Guidelines when there are non-exertional limitations that "significantly affect [a] claimant's ability to perform the full range of jobs" at a given exertional level. Ortiz v. Sec'y of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989) (citation and internal quotation marks omitted). However, in appropriate cases, the Commissioner may make a finding that a claimant's nonexertional limitations do not significantly erode the occupational base, without the aid of vocational expert testimony. Appropriate cases are those in which the nonexertional limitations are "found to impose no significant restriction on the range of work a claimant is exertionally able to perform." Id. In such cases, "reliance on the Grid remains appropriate." Id.

> Whether . . . the [Commissioner] can satisfy his burden under step five without resorting to vocational evidence depends on how closely the claimant's characteristics and the Grid criteria overlap. [T]he Grid is meant to reflect the potential occupational base remaining to a claimant in light of his strength limitations. If a non-strength impairment, even though considered significant, has the effect only of reducing that occupational base marginally, the Grid remains highly relevant and can be relied on exclusively to yield a finding as to disability. Yet the more that occupational base is reduced by a nonexertional impairment, the less applicable are the factual predicates underlying the Grid rules, and the greater is the need for vocational evidence.

Id. at 524-25 (footnote omitted).

At oral argument, the Commissioner explained that a Guidelines decision is appropriate in this case because Lindsey's residual functional capacity does not erode the very broad occupational base of simple, unskilled work, across all exertional levels. As explained in the recommended decision adopted by the Court in Prescott v. SSA Commissioner, No. 1:09-cv-522-JAW, 2010 WL 4259001,*10, 2010 U.S. Dist. Lexis 112997, *31-34 (D. Me. Oct. 21, 2010), a restriction to simple, unskilled work does not erode the broad occupational base that informs the Medical-Vocational Guidelines and, consequently, would not prevent a guidelines decision at step 5, particularly as there is no exertional limitation.[3] Consequently, the decision to affirm or remand in this case turns on the issue of whether substantial evidence in the record supports the finding that the only mental functional restriction is to simple, unskilled work.

The Disability Determination Services referred Lindsey's medical records in September 2006 to David R. Houston, Ph.D., for completion of the Commissioner's psychiatric review technique (PRT). Dr. Houston's PRT identified bipolar depression as a severe mental impairment that called for a mental residual functional capacity assessment. (R. 156, 159, 166.) Because of this finding, Dr. Houston completed the Commissioner's Mental RFC Assessment

---

[3] Compare, e.g., Conley v. Astrue, Civ. No. 08-202-P-S, 2009 U.S. Dist. Lexis 7658, *5-8, 2009 WL 214557, *2-3 (D. Me. Jan. 28, 2009) (Rich, Mag. J. Rec. Dec.) (rejecting application of Guidelines where claimant was restricted to sedentary exertion level, simple work, maintaining attention in two-hour blocks, and no public contact).

form as well. His RFC checkbox-assessments ("summary conclusions") identify moderate limitation in relation to work involving detailed instructions, both on account of understanding and memory deficits and on account of concentration and persistence deficits. In addition, Dr. Houston indicated that Lindsey would be moderately impaired with regard to: (1) prolonged concentration and attention; (2) keeping a schedule, maintaining attendance, and being punctual; (3) completing a normal workday and workweek without interruptions from psychological conditions; (4) accepting instructions and criticism from supervisors; (5) getting along with co-workers or peers without distracting them or exhibiting behavioral extremes; and (6) responding appropriately to changes in the work setting. (R. 170-71.) In his narrative assessment he elaborated that Lindsey can understand and remember simple instructions, is able to interact with co-workers and supervisors, can carry out simple tasks, and can adapt to simple changes. (R. 172.) With respect to the summary conclusions he made about moderate impairment in Lindsey's ability to complete the day without interruptions from psychological conditions or on her ability to maintain attendance, be punctual, or keep to a schedule, Dr. Houston merely wrote that Lindsey would be able to carry out simple tasks. (Id.) With respect to the summary conclusions that she would be moderately limited socially, he explained that she "is able to interact with co-workers and supervisors." (Id.) Finally, with respect to moderate adaptive limitations, Dr. Houston explained that Lindsey would be able to adapt to simple changes. (Id.)

This Court has adopted a recommended decision, albeit in the absence of an objection, holding that the narrative section of the Commissioner's mental RFC assessment form offers the consulting expert's "official" assessment, rather than the summary conclusion checkboxes. Swift v. Astrue, Civ. No. 08-280-B-W, 2009 U.S. Dist. Lexis 35702, *8-9, 2009 WL 902067, *3 (D. Me. Apr. 21, 2009). This interpretation of the Commissioner's mental RFC assessment form is

consistent with the Commissioner's own regulatory interpretation. Soc. Sec. Admin. Program Operation Manual Sys. § DI 24510.060(B)(2)(a) & (4)(a) (attached). In effect, it is generally permissible for an administrative law judge to rely on a consulting expert's narrative findings without treating a particular checkbox conclusion of a "moderate" limitation in a specific area as necessarily calling for a corresponding functional restriction. Thus, for example, in <u>Arsenault v. Astrue</u>, Civ. No. 08-269-P-H, the Court recently adopted a supplemental report and recommended decision, over objection, where Dr. Houston had summarily concluded that moderate limitations would exist for the claimant in the area of concentration, persistence, and pace, but omitted any related restriction from his narrative findings. However, in that case, Dr. Houston also cited treatment records indicating that task completion and concentration deficits existed only when pain symptoms were at their worst, thereby providing some indication why the concentration, persistence, and pace limitation did not translate into his ultimate residual functional capacity opinion. 2009 U.S. Dist. Lexis 122425, *7-8, 2009 WL 1609033, *3 (D. Me. June 8, 2009).

Here, somewhat similarly, the Judge interpreted Dr. Houston's narrative to offer an assessment that Lindsey would not be precluded from performing the broad base of unskilled occupations. According to the Commissioner's administrative rulings, unskilled work generally requires the mental capacity to (1) understand, remember, and carry out simple instructions; (2) make simple work-related decisions; (3) respond appropriately to supervision, co-workers and usual work situations; and (4) deal with changes in a routine work setting. Soc. Sec. Ruling 96-9p, 1996 SSR Lexis 6, *25-26, 1996 WL 374185, *9. Dr. Houston's narrative closely overlaps with this framework, though he opines that Lindsey could adapt to "simple changes" rather than "deal with changes in a routine work setting." Arguably, this presentation mirrors the one in

Arsenault.  However, I am not persuaded that the disappearance of the concentration, persistence, and pace summary conclusions is adequately explained in Dr. Houston's narrative or elsewhere in the forms he signed.

The fly in the ointment that Lindsey emphasizes concerns her ability to maintain concentration, persistence, and pace.  Notably, Dr. Houston found moderate limitations in her ability to complete a normal workday and workweek without interruption from psychological symptoms and to perform at a consistent pace.  (R. 171.)  In addition, moderate limitation was noted in relation to attendance, punctuality, and sustained attention.  (R. 170.)  Dr. Houston's narrative elaboration is simply that Lindsey has an ability to carry out simple tasks and can understand and remember simple instructions.  (R. 172.)  This narrative sweeps under the rug those summary conclusions related to enduring a full-time schedule, conforming to work-a-day expectations, and maintaining an acceptable pace, let alone maintaining attention for a prolonged duration.  These are very significant factors related to full-time employment, whether skilled or unskilled.  The fact that these summary conclusions simply disappear without any explanation weakens the persuasive force of Dr. Houston's mental RFC assessment.  For example, Dr. Houston's assessment strongly suggests the need for a competitive pace restriction, even if it is somehow assumed that attendance and attention issues would fall within a tolerable range.  Moreover, it is not at all clear how the Court would infer that attendance and attention issues would likely fall within tolerable limits.  Possibly, Dr. Houston regarded the concentration, persistence, and pace issues as credibility and vocational concerns that were more appropriately left to the Judge and a vocational expert.  However, in light of the ambiguity arising from Dr. Houston's mental RFC assessment, which the Judge relied on as substantial evidence in support of his decision, I am not persuaded that a credibility determination suffices here.  Moreover, the

Judge never presented any step 5 hypothetical to the vocational expert in this case.  In fact, the Judge remarked on the record that he felt he could rule from the bench in Lindsey's favor on the basis of Ruling 85-15,[4] stating that he did not think Lindsey would be capable of "regular, competitive employment."  (R. 273.)  His emphasis on the regular and competitive aspects of substantial gainful activity correlates strongly with the pace and attendance concerns flagged in Dr. Houston's summary conclusions.  It appears that the Judge later changed his mind based on a lay assessment of new treatment records never reviewed by Dr. Houston or another Disability Determination Services psychologist.  This was not lost on Lindsey, who reminds the Court that a Judge's findings are not conclusive when they are based on interpretations normally entrusted to experts.  (Statement of Errors at 13-14.)  The limiting effects of Lindsey's bipolar disorder are not obvious and I agree that Lindsey identifies yet another significant problem with this additional point of error.  Nguyen, 172 F.3d at 35 ("The ALJ's findings . . . are not conclusive when derived by . . . judging matters entrusted to experts.").

Ultimately, I conclude that Dr. Houston's telegraphic narrative, which does not explain the disappearance of seemingly significant summary conclusions, falls short of providing a substantial evidentiary basis for application of the Guidelines at step 5.  Additionally, the Judge's decision offers nothing more than a conclusory statement to the effect that section 204.00 of the

---

[4] Ruling 85-15 relates two concerns:

> (1) that the potential job base for mentally ill claimants without adverse vocational factors is not necessarily large even for individuals who have no other impairments, unless their remaining mental capacities are sufficient to meet the intellectual and emotional demands of at least unskilled, competitive, remunerative work on a sustained basis;  and (2) that a finding of disability can be appropriate for an individual who has a severe mental impairment which does not meet or equal the Listing of Impairments, even where he or she does not have adversities in age, education, or work experience.

1985 SSR Lexis 20, *1-2, 1985 WL 56857, *1.

12

Guidelines suggest a finding of not disabled at step 5. Given this peculiar presentation, I recommend that the Court remand this case for further development.[5]

## Conclusion

For the reasons set forth in the foregoing discussion, I RECOMMEND that the Court vacate the Administrative Law Judge's decision and remand for further proceedings consistent with the foregoing discussion.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

January 10, 2011

---

[5] This recommendation is not meant to indicate that the function reports offered by Lindsey's treatment providers are entitled to controlling weight or that the limiting effects of Lindsey's bipolar disorder do not allow for some credibility assessment. Rather, the point is that the evidence thus far developed by Disability Determination Services is not substantial evidence in support of a residual functional capacity finding that omits a concentration, persistence, and pace limitation. Unless and until such evidence exists, a guidelines framework decision is unavailable at step 5.